(No. 23860.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HARRY CAIN *et al.* Plaintiffs in Error.

*Opinion filed February 12, 1937.*

IRVINE R. WASSON, for plaintiffs in error.

OTTO KERNER, Attorney General, and CHARLES P. GREEN, State's Attorney, for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

Harry Cain, Clarence Wood and Cecil Cain were convicted in the circuit court of Marshall county of larceny. A jury fixed the value of the property stolen at $25.42. Cecil Cain was admitted to probation. Harry Cain and Wood (hereinafter referred to as the defendants) were sentenced to imprisonment in the penitentiary. They prosecute this writ of error.

To obtain a reversal of the judgment of conviction the defendants make two contentions. Of these the first is that the trial court erred in admitting in evidence the confession of Cecil Cain, a co-defendant. This confession was read to the jury over the objection of the defendants, neither of whom was present when it was made. The State's attorney offered the confession for the limited purpose of having it effective against Cecil Cain, and the court specifically instructed the jury to disregard it as evidence against the defendants if their names should be mentioned in the statement. The record discloses, further, that neither of the defendants made a motion for a separate trial. They are therefore in no position to complain. A defendant who has not petitioned for a severance cannot object to the admission in evidence of a confession of a co-defendant, where the evidence is by proper instructions limited to the co-defendant making the confession. *People* v. *Swift,* 319 Ill. 359.

The second contention of the defendants is, that the court erred in denying their motion for a new trial. This motion was supported by seven affidavits—those of the two defendants, their respective wives, the mother-in-law of one defendant, and two other persons not shown to

have been directly interested in the outcome of the trial. Counter-affidavits of W. S. Osborne, the sheriff, the deputy sheriff and the county superintendent of highways were submitted. The trial judge appointed Osborne as custodian of the jury during their deliberations on their verdict in the county court room, on the first floor of the court house. Osborne's office was on the same floor. The case went to the jury about 5:00 o'clock in the afternoon of April 8, 1936. From the affidavits supporting the motion for a new trial it appears that the seven affiants were in the corridor outside the county court room on the night of April 8. The affidavits charged (1) that about 8:00 P. M., in response to the following statement by a person apparently waiting to accompany one of the jurors home, "This jury may be here until 10:00 o'clock," the sheriff remarked in a loud tone, "I don't care if they are, I will wait here so long as they bring in the right kind of a verdict;" (2) that two hours prior to the jury reaching a verdict the sheriff put his ear against a crack in the door to the jury room several times, presumably to ascertain what was taking place; (3) that between 10:00 and 11:00 P. M. two jurors left the jury room, passed down the hall, entered the sheriff's office, and remained there two or three minutes before returning to the jury room; and (4) that about a half-hour before the verdict was announced the foreman of the jury came out into the hall, handed the sheriff a piece of paper and asked him, "Does this mean to find one of them or all of them guilty?" and that the officer replied, "It means to find them all guilty." The sheriff, in his affidavit, specifically denied each of these four charges. Furthermore, the deputy sheriff swore that he was in the sheriff's office continuously from 9:00 o'clock in the evening until midnight and that at no time did any juror in this case come into that office. By their affidavits in support of the motion for a new trial the affiants also alleged that at various times two or three jurors left the jury room for

the purpose of going to the men's lavatory, and that on several such occasions, when members of the jury were in the toilet room, the sheriff also entered it, closed the door and remained there for several minutes. The sheriff answered that from time to time during the progress of the jury's deliberations one or more of the jurors would knock at the door and seek permission to go into the lavatory, located between the court room and the sheriff's office; that there was no other men's lavatory in the building and no direct mode of access to it from the court room; that he granted the permission sought and accompanied them to the door of the toilet; that no strangers were present in the lavatory at such times; that immediately upon coming out of the wash-room the jurors returned to their quarters, and at no time did any of them, when they left the jury room to go to the toilet, have any contact or communication with outside persons. He added that he was not present in the jury room during any portion of the time the jury was discussing this case, and that no improper influence of any kind or character was exerted upon the jurors, collectively or individually, by any stranger or by the affiant. The defendants insist, however, that the affidavits show improper and prejudicial conduct on the part of the sheriff and the jury, and that, in consequence, the court should have granted their motion for a new trial.

In order to constitute ground for setting aside the verdict of a jury on account of their conduct or because of any unauthorized communication with them, it is necessary to show that the defendant was prejudiced. (*People* v. *Coniglio,* 353 Ill. 643; *People* v. *Brothers,* 347 id. 530; *People* v. *Matlock,* 303 id. 399; *People* v. *Strause,* 290 id. 259; *People* v. *Duncan,* 261 id. 339; *Adams* v. *People,* 47 id. 376; *Reins* v. *People,* 30 id. 256.) Some of the acts constituting the alleged misconduct on the part of the sheriff, if true, could not possibly have influenced the jury. In particular, the expression of his desire for a satisfactory

verdict was not claimed to have been made to a juror. This and other charges were categorically denied by the sheriff in his counter-affidavit. In addition, the charge that several jurors repaired to the sheriff's office between 10:00 and 11:00 P. M. was refuted by the deputy sheriff, who asserted that he, alone, was present in that office during the time specified. The fact that the sheriff testified upon the trial is immaterial. The record discloses that his testimony merely related to his apprehension of the defendants and Cecil Cain and to the circumstances attending the signing of the latter's confession. The opposing affidavits with respect to the sheriff accompanying certain jurors to the lavatory differ in only minor particulars. The affidavits made by the defendants and by others in their behalf did not assert that the jurors on such occasions were actually exposed to outside influences. Manifestly, the mere fact that the jurors went to the toilet, as alleged, did not warrant a new trial. There may well be circumstances that will necessitate a juror being absent from the others, in charge of an officer. So far as the affidavits show, the jurors did not have opportunity to communicate with any person other than the sheriff, and he denied communicating with them in any manner to the detriment of the defendants. Even if it be conceded that the affidavits show irregularities on the part of the officer in charge of the jury, they were insufficient to vitiate the verdict. The trial judge was satisfied, from the affidavits, that the defendants' case was decided by the jury free from unauthorized interference. Under the circumstances disclosed by the record, the court, in the exercise of a sound judicial discretion, was fully warranted in denying the defendants' motion for a new trial. *People* v. *Coniglio, supra; Gainey* v. *People,* 97 Ill. 270.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*