(No. 29904.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CARL RITCHESON, Plaintiff in Error.

*Opinion filed January 22, 1947.*

GoldenHersh & GoldenHersh, of East St. Louis, for plaintiff in error.

George F. Barrett, Attorney General, and Louis P. Zerweck, State's Attorney, of Belleville, for the People.

Mr. Justice Murphy delivered the opinion of the court:

On a trial by jury in the circuit court of St. Clair county, plaintiff in error was found guilty of the crime of

rape and his punishment was fixed at 99 years in the penitentiary. He has sued a writ of error out of this court to review the record of his conviction. The errors urged for reversal are denial of a motion for a continuance, that the evidence does not establish guilt beyond a reasonable doubt, that improper instructions were given and that the argument of the assistant State's Attorney was improper and prejudiced the jury against plaintiff in error.

On the evening of August 11, 1945, prosecutrix, aged 10, and her sister, aged 13, attended a moving-picture show in downtown East St. Louis. Their home was on Fiftieth street in East St. Louis and to reach there they boarded a State street bus about 11:30 P.M. The bus was crowded and the girls became separated. The older girl left the bus about a block from the intersection of Fiftieth and State streets. Prosecutrix did not know her sister had left the bus and rode some distance past the stopping place nearest their home. The intersection where prosecutrix alighted is not definitely located, but it was some distance beyond the proper intersection. No other person got off the bus at the place where prosecutrix alighted. She crossed State street to an intersecting street and started walking on such street. She had not gone far on the intersecting street when an automobile passed and, in a short distance, came to a stop. She testified that the man driving the automobile got out and stood near a tree. When she was near the automobile the man struck her on the head. Either the blow or her attempt to escape caused her to fall. The man picked her up and directed her to get into the autmobile. She refused and he wrenched her arm or body and threw her into the car. Later he raped her. In the brutal assault committed on her, she received blows on the head causing bruises and contusions, and her female organs were severely torn.

About 2:30 A.M. prosecutrix appeared alone at the home of Martin Birk, who lived on a rural route which

was evidently a considerable distance from the place prosecutrix left the bus. Birk called a doctor and prosecutrix was taken to a hospital. Plaintiff in error's defense was an alibi and none of the foregoing facts were in dispute.

Prosecutrix's sister was also assaulted that same night at a place some distance from where prosecutrix was ravaged. On September 18, the grand jury returned four indictments against plaintiff in error. Indictment No. 10198 charged him with assault with intent to murder prosecutrix. Indictment No. 10199 charged him with raping her. The third indictment, No. 10200 charged plaintiff in error with assault with intent to murder prosecutrix's sister and the fourth, No. 10201, charged .him with having raped her.

Plaintiff in error selected counsel of his own choosing but was unable to furnish bail. On September 24, he was arraigned in the instant case and entered a plea of not guilty. Sometime thereafter all four of the indictments were set for trial on October 15, the setting being in numerical order.

On October 15, the instant case was called for trial and defendant moved for a continuance on the ground that he did not have adequate time to prepare for trial. The motion was overruled and such ruling is assigned as error.

Plaintiff in error's affidavit filed in support of his motion for a continuance shows that, shortly before the time when the several indictments were returned, he employed counsel to represent him and that such counsel began the ·preparation of his defense. It is alleged that the four indictments were set in numerical order and that "the custom and practice in the circuit court of St. Clair county in the setting of criminal cases is that the clerk of the said court prepares a setting in accordance with the directions of the State's Attorney of said county as to the order in which the cases are to be tried; that the custom and practice in the said court is to call the cases in the order in

which they appear on the setting." It is further alleged that plaintiff in error relied on such practice and directed his efforts to the preparation of his defense in No. 10198, that instructions and motions were drafted for use in said cause and that he had subpoenaed witnesses in such case. It is further stated that he had no notice of an intended change of the setting until shortly before the instant case was called for trial. It is alleged that approximately ten minutes before the call of the docket the State's Attorney served notice, listing the names of five witnesses whom he expected to call, and it is stated that plaintiff in error's counsel had interviewed but two of such witnesses and that the other three were not available. It was further stated that he would be ready for trial on any or all of the four indictments at the next setting of the trial calendar.

It will be observed that plaintiff in error did not undertake to make his motion for a continuance on the grounds of the absence of a material witness as provided in an act regulating continuances, (Ill. Rev. Stat. 1945, chap. 38, par. 738,) but on the sole ground that his counsel did not have time to prepare his defense. In view of the grounds stated in the motion and the contents of the affidavit it is not necessary to consider any right plaintiff in error had to insist on the indictments being tried in the order in which they appeared on the docket and trial calendar. In *People* v. *Storer,* 329 Ill. 536, it was said: "A defendant in every criminal case is entitled, under the law, to a reasonable time and full opportunity to prepare for his trial, and that right is one guaranteed to him by the constitution. What is a reasonable time for the preparation of a case and what time should be granted counsel for that purpose must necessarily depend upon the facts and circumstances of each case and is a matter largely resting in the sound judicial discretion of the trial court, which will only be disturbed on review in a court of appeal when

it is shown that that discretion has been abused." *People* v. *Singer,* 288 Ill. 113.

Before it can be held that a motion for continuance based on lack of time to prepare for trial has been im-, properly denied, it must appear that the refusal to grant additional time has in some manner embarrassed the accused in his defense and thereby prejudiced his rights. (*People* v. *Kunowski,* 360 Ill. 416; *People* v. *Dale,* 355 Ill. 330.) In determining whether a motion for a continuance should be granted, the trial court may exercise a wide discretion, and in considering such question consideration should be given the gravity of the offense charged, the character of evidence, the number and availability of witnesses, nature of the defense and other circumstances germane to the question. *People* v. *VanNorman,* 364 Ill. 28.

The evidence which was competent to prove the indictment charging assault with intent to murder was, under the circumstances here, competent to prove the allegations of the indictment charging rape. The essential elements of the two crimes are not in all respects the same but the difference between them does not avail plaintiff in error any benefit in this case. The defense interposed to the indictment charged was an alibi. Such defense did not in theory deny the crime was committed but was introduced to prove that defendant during the whole time was so far from the place where the crime was committed that he could not have participated in it. (*People* v. *Lukoszus,* 242 Ill. 101.) Plaintiff in error's affidavit contained the allegation that he was prepared to go to trial on the indictment charging assault with intent to murder but it does not appear that if further time to prepare for the defense of the rape charge had been allowed he would have been able to offer a defense in this case different from the one he was already prepared for in the intent-

to-murder charge. It is not claimed that he could not produce all witnesses that were available, or that further investigation of the facts might develop a different defense.

The fact that plaintiff in error's counsel had not been given an opportunity to interview all the witnesses before the case was called for trial was not, in view of the facts here, ground for taking it from the trial calendar, especially since it is stated in his affidavit that he was prepared to go to trial on the charge of assault with intent to murder. Although we do not commend the practice of permitting a State's Attorney to change the order of the trial of criminal cases already on the calendar, as was done in this case, yet, under the unusual circumstances shown, the denial of plaintiff in error's motion for a continuance was not prejudicial error.

The contention that the evidence does not prove guilt beyond a reasonable doubt goes to the proof of identification and plaintiff in error's evidence of an alibi. The evidence shows the home of prosecutrix and that of plaintiff in error were in the same general community. She testified that for sometime prior to the assault she had known plaintiff in error and where he lived; that during the evening immediately preceding the attack she passed near plaintiff in error's home, and that he invited her to go into the house but that she refused. Plaintiff in error denied the making of such invitation but on cross-examination he admitted that he knew her and had on other occasions observed her going through the yard.

A deputy sheriff of said county interviewed prosecutrix in the hospital on the third day after the attack. He testified that immediately following such interview, he and other officers arrested plaintiff in error, took him to the police station and from there to prosecutrix's room in the hospital. He further stated that when plaintiff in error entered the room prosecutrix said that he was the man. The deputy sheriff also testified that after her iden-

tification they asked plaintiff in error if he knew prosecutrix, to which he replied that he did not, and that her reply made in his presence was that "He is lying, he sees us every day." The testimony of the three officers who accompanied the deputy sheriff corroborated him as to prosecutrix's identification of plaintiff in error. There are some discrepancies in their evidence bearing on the question as to whether she identified him the first time plaintiff in error was taken into her hospital room or on the second view. The weight to be given such testimony in connection with such discrepancies was a question for the jury. On the trial prosecutrix positively and definitely identified plaintiff in error as her assailant.

Reference is made to prosecutrix's evidence bearing on the question as to whether it was light or dark at the scene of the crime, and whether she had an opportunity of observing her assailant. She testified that his face was covered, while at another point in her testimony it would appear that the cover over his face was removed at least a part of the time during the commission of the offense. It is certain that if the jury adopted her evidence as true they could have found that at the time the crime was being committed she had an opportunity to see her assailant either by the light from a street lamp or by lights of the automobile.

Complaint is made as to the method of identification, in that prosecutrix did not select plaintiff in error from among others without suggestion from the officers. Reference is made to the rule in this State as announced in *People* v. *Berne,* 384 Ill. 334; and *People* v. *Botulinski,* 383 Ill. 608. There is a distinction between the facts in the cases where the rule contended for was applied and the facts of this case. Here, prosecutrix had known plaintiff in error for some time prior to the commission of the offense. If she was correct in her deductions as to who her assailant was, then there was no occasion for her fur-

ther identification of him under the circumstances required by the rules announced in the cases cited.

The evidence pertaining to the alibi was the testimony of plaintiff in error and Mrs. Allecy Tyson. According to their testimony they met in the late afternoon of August 11, in East St. Louis, and about 7 P.M. were at a gasoline filling station in St. Louis; that they spent about two hours there and then returned to Illinois. If their testimony as given in the trial were to be taken as true, it appears that plaintiff in error was in the presence of Mrs. Tyson all of the time the crime was being committed and that they were some distance from the place where it occurred. Things which the jury might have considered as weakening the credibility of their evidence were that immediately after plaintiff in error's arrest he told the officers that during the time in question he was at various places none of which were the ones upon which he relied on the trial. The officers testified that the places where he first stated he had been were investigated and that his statement was found to be without any foundation of truth. It also appears that Mrs. Tyson was taken into custody about the same time that plaintiff in error was arrested and she signed a written statement in which she stated plaintiff in error had borrowed her car about 11:00 P.M. on the night in question and did not return it until about 1:30 the next morning. She contends that such statement was obtained by threats of the police officers. They denied any such threats. These were all questions for the jury. Enough has been stated to show that there was evidence, if accepted by the jury as true, to prove the offense of rape as charged and that plaintiff in error had committed the same.

Instruction No. 8, given on behalf of the People, told the jurors it was not necessary that they believe that every incriminating fact or circumstance in evidence had been proved beyond a reasonable doubt "but that it was sufficient

if the jury believed from all the evidence in the case that the guilt of the defendant in manner and form as charged in the indictment has been proven beyond a reasonable doubt." The criticism is that after advising the jury that it was not necessary that every incriminating fact and circumstance be proved beyond a reasonable doubt, the instruction proceeded to leave it to the jury to determine what facts it was necessary to prove beyond a reasonable doubt to establish plaintiff in error's guilt. Plaintiff in error seeks to bring this instruction within that class of cases where instructions have been condemned which leave it to the jury to determine what are "material facts" or "material allegations," but the instruction in question does not contain the vice that was embodied in the instructions to which the rule was applied. It is well settled that a court may instruct a jury that it is not necessary to prove every incriminating fact or circumstance beyond a reasonable doubt before finding a verdict of guilty, but the instruction in this case told the jury that it was sufficient to warrant a verdict of guilty if it believed the crime charged in the indictment had been proved beyond a reasonable doubt. The reference to the indictment was the same as though the instruction had referred to the crime of statutory rape, for that was the offense charged in the indictment. Instruction No. 1, given on behalf of the People, defined rape, both forcible and statutory, in the language of the statute. The two instructions together had the effect of telling the jury that if it believed the crime of statutory rape as defined in the instruction and as set forth in the indictment had been proved beyond a reasonable doubt, it could return a verdict of guilty even though there were incriminating facts and circumstances, in the chain of evidence, which had not been established beyond a reasonable doubt. Other instructions given on behalf of both parties advised the jury as to the law in reference to the defense of alibi, so that taking the instruc-

tions as a series the jury was not misled and was not left to determine what were the material elements of the crime charged.

Instruction No. 5 told the jurors that any doubts they might entertain as to defendant's guilt must be based on the evidence, that they could not go beyond the evidence, that such doubts must be reasonable and not imaginary and must arise from an impartial consideration of all the evidence, and if after such consideration they had an abiding conviction amounting to a mortal certainty of the truth of the charge "then you are satisfied beyond a reasonable doubt and your verdict should be guilty." The objection is that the instruction is argumentative and that it undertakes to define the term "reasonable doubt," which this court, in many cases, has said is self-explanatory. In consideration of instruction No. 5, reference should be made to instruction No. 3, given on behalf of plaintiff in error. It told the jurors that if, after having heard all the evidence, they had a reasonable doubt of the guilt of plaintiff in error, and if they were not satisfied of his guilt to a moral certainty, then it was their duty to give the plaintiff in error the benefit of such reasonable doubt and find him not guilty. Long and involved instructions defining reasonable doubt have been condemned and likewise we have disapproved the giving of many instructions which undertake to explain the meaning of the term "reasonable doubt." However, in this case the two instructions are in effect the opposite of each other. The one given on behalf of the People may be considered in two aspects. First, it is of a cautionary nature, in that it tells the jurors they should not go beyond the evidence to search for a doubt and that their consideration should be based on all the evidence. It also states that a reasonable doubt which they may entertain must be real as distinguished from an imaginary doubt, and then concludes that if they are convinced beyond a reasonable doubt to a moral certainty they should

find the defendant guilty. The other instruction tells the jurors that if they are not convinced beyond a reasonable doubt and to a moral certainty they should find the defendant not guilty. We cannot perceive how instruction No. 5, when considered with the instruction given on behalf of plaintiff in error, could have confused the jurors as to the meaning of the term "reasonable doubt" or as to their duty as jurors if they found that a reasonable doubt existed. There was no reversible error in the giving or refusal of instructions.

The final contention is that an assistant State's Attorney made improper and inflammatory remarks in his argument to the jury. The abstract contains no reference to the argument of counsel except that which is contained in plaintiff in error's motion for new trial. The motion which is sworn to by the attorney for plaintiff in error undertakes to set forth excerpts from the argument of the assistant State's Attorney. It does not show that any objection was made to such argument and that the court ruled thereon. In *People* v. *Ladas,* 374 Ill. 419, it was held that the remarks of the assistant State's Attorney, made in his argument to the jury, should be incorporated into the transcript of the proceedings. See, also, *People* v. *McDonald,* 365 Ill. 233. In the consideration of errors assigned, the court must be guided by what is shown in the abstract of record. The questions which plaintiff in error urges in reference to the arguments of counsel are not properly preserved and do not appear in the abstract of record, and, therefore, the same cannot be considered.

The judgment is affirmed.            *Judgment affirmed.*