(No. 32722.-

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MAX DOLGIN, Plaintiff in Error.

*Opinion filed May 20, 1953—Rehearing denied September 21, 1953.*

CHARLES A. BELLOWS, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, (BEN W. HEINEMAN, JOSEPH D. BLOCK, and ROBERT F. HANLEY, of counsel,) for the People.

Mr. JUSTICE FULTON delivered the opinion of the court:

Plaintiff in error, Max Dolgin, and one Jacob Lieb were indicted by the grand jury of Cook County on a charge of forging and counterfeiting cigarette tax meter stamps for the purpose of evading the Illinois Cigarette Tax Act. The indictment contained two counts, the first charging that the defendants themselves forged and counterfeited the stamps and the second that they caused and procured others to do so. At the trial before a jury in the criminal court of Cook County, the People elected to stand on the first count. The jury found Lieb not guilty but returned a verdict of guilty against plaintiff in error, upon which he was sentenced by the court to confinement in the State Penitentiary for a term of not less than two years nor more than ten years. He has sued out a writ of error to review the judgment and sentence.

The first assignment of error relates to the refusal by the trial court to allow a motion to suppress certain evidence, consisting of metering machines and equipment and cartons of stamped cigarettes seized in a raid made upon the place of business occupied by the R & L Tobacco Co., Inc., the corporation of which plaintiff in error was presi-

dent. This evidence was seized by State highway policemen under authority of a search warrant issued by one of the judges of the criminal court of Cook County and a directive issued by the Department of Revenue of the State of Illinois under section 11 of the Illinois Cigarette Tax Act. (Ill. Rev. Stat. 1951, chap. 120, par. 453.11.) It is contended that the affidavits supporting the complaint for the search warrant are legally insufficient; that there was an unreasonable delay between the time the authorities obtained the information concerning the counterfeit tax stamps and the time of application for the search warrant and that a State highway policeman did not have authority to execute the warrant. Plaintiff in error also contends that section 11 of the Illinois Cigarette Tax Act, empowering officers and agents of the Department of Revenue to enter the place of business of a distributor without a search warrant and inspect the premises, stock of cigarettes, and vending devices with a view to determining if any of the provisions of the act are being violated, does not extend to State highway policemen, and that mere possession of a directive from the Department of Revenue does not make such an officer an agent or employee of the Department.

Plaintiff in error says that the search warrant was issued upon hearsay affidavits. The complaint for the warrant was signed by H. W. Nofs, a State highway policeman. It charges that the R & L Tobacco Co., Inc., William M. Levy and Max Dolgin counterfeited tax meter stamps and that the stamps and various tools for making them were concealed at 5645-47 South Harper Avenue, Chicago, Illinois, the business address of R & L Tobacco Co., Inc. Three affidavits were attached to the complaint. The first is that of A. H. Johnson, an investigator. He swore that on various dates between August 24, 1951, and October 8, 1951, he purchased eleven cartons of cigarettes of various brands at six retail stores. These he marked with a symbol for identification, the date of purchase and the name and

address of the store where purchased. He sent them un-opened to Pitney-Bowes, Inc., at Stamford, Connecticut. The second affidavit was that of S. J. Madenford, assistant manager of the tax equipment section of Pitney-Bowes, Inc. He swore he received the cartons sent by Johnson, identify-ing them by the symbols; that he opened the cartons and examined the Illinois cigarette tax stamps appearing on the packages therein and that the same were counterfeit. His affidavit also sets forth that Pitney-Bowes is the exclusive manufacturer of tax meters used in Illinois as well as in 36 other States; that each tax meter is assigned an exclusive serial number which is never reissued or duplicated; that this serial number represents a particular distributor to whom the meter is licensed in the State of Illinois; that this serial number is imprinted in boldface type on each package of cigarettes upon which a cigarette tax meter stamp is imprinted. He further swore that of the eleven cartons of cigarettes received, all but one bore the serial number 23227, the serial number assigned to R & L To-bacco Co., Inc. The third affidavit was another sworn to by A. H. Johnson. It states that affiant went to the six retail establishments where he had originally purchased the cigarettes; that he examined sales invoices and various other records covering a certain period before and after the date of purchase and that in five of the six cases the records examined disclosed that the R & L Tobacco Co., Inc., was the retailer's exclusive supplier of cigarettes for the period in question. Johnson also stated that he had personally examined the premises of the R & L Tobacco Co. and that he personally knew the company was engaged in the business of selling cigarettes at wholesale. His affi-davit stated that he had personally examined the records of the Department of Revenue of which he was an em-ployee and that they disclosed that the tax meter bearing serial number 23227 had been assigned to R & L Tobacco Co., Inc.

Specifically stated, plaintiff in error's objection is that Johnson's second affidavit is hearsay because it sets forth what he observed upon checking the records of the six retail establishments without incorporating the records themselves or authenticated copies thereof. It is said that because of this omission the affidavits contain no facts from which the issuing magistrate could conclude that the R & L Tobacco Co., or plaintiff in error was the supplier of cigarettes to the retail establishments in question.

Section 6 of article II of the constitution of this State provides that no search warrant shall be issued without probable cause, supported by affidavit, particularly describing the place to be searched and the persons or things to be seized. In applying these provisions of our basic law this court has repeatedly held that the affidavit in support of a search warrant must state facts which are within the personal knowledge of affiant; that affidavits made upon information and belief are legally insufficient and that search warrants issued upon such complaints or affidavits are in violation of the constitutional rights of the persons affected. (*People* v. *Elias,* 316 Ill. 376; *People* v. *Sovetsky,* 343 Ill. 583.) The existence of probable cause is always the ultimate question. This is judicial—to be decided by the magistrate before whom the complaint is made. (*People* v. *Prall,* 314 Ill. 518.) We have said that the complete legal idea expressed by the term "probable cause" is not to be gathered from a mere definition. (*People* v. *Daugherty,* 324 Ill. 160.) However, where a belief is held in good faith by the prosecutor of the guilt of the accused based upon circumstances sufficiently strong to induce the belief in the mind of a reasonably cautious person that the defendant in the prosecution was guilty of the particular offense charged, probable cause for the arrest of the person exists. (*Glenn* v. *Lawrence,* 280 Ill. 581.) If there is reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that

the person accused is guilty of the offense charged, it is a sufficient basis for the issuance of a search warrant. (*People* v. *Lavendowski*, 329 Ill. 223.) In *People* v. *DeGeovanni*, 326 Ill. 230, at page 234, we said: "A complaint for a search warrant is to be regarded as sufficient to authorize the issuance of a search warrant when the facts therein stated and sworn to show probable cause for the writ. It is not required that the complaint for a search warrant should show, beyond a reasonable doubt, that the writ should be issued."

In the case before us the affidavit of Johnson is not made upon information and belief. It states positively and unequivocally that affiant visited the retail establishments where cigarettes bearing forged stamps had been purchased originally and that upon personal inspection of their records by affiant it appeared that defendant's company had been the sole supplier of cigarettes at the times in question. The affidavit sets forth in considerable detail what records were examined and what the records showed; this evidence was competent and direct as bearing upon the issue of probable cause. It is a statement of facts within affiant's personal knowledge—of what he himself saw and observed. While it is true that the records themselves would have to be produced to prove the truth of the facts recited therein, affiant's statements to prove what the records showed were competent upon the issue of probable cause so long as they were based upon his personal inquiries and observations. We believe that the affidavits, taken together, make a clear case of probable cause for the issuance of the warrant. They are not subject to the hearsay objection interposed by plaintiff in error.

The cigarettes in question were purchased over a period from August 24, 1951, to October 8, 1951, from various retailers on repeated shopping days. The search warrant was not applied for until November 26, 1951, some 49 days after the date of the last purchase. Plaintiff in error says that this lapse of time between the last date of information

and the date of application for the warrant invalidates the warrant. No Illinois decisions are cited in support of this position but a number from other jurisdictions are cited in which, under the particular circumstances, the lapse of time was held to be unreasonable. We have examined the cases cited by plaintiff in error. In most of them the warrant was based upon an isolated event taking place some time previously. There was no evidence of a continuing offense such as was made to appear to the magistrate in this case. This court has said that no hard-and-fast rule concerning the time within which the complaint should be made can be established except that it should not be too remote. (*People* v. *Holton,* 326 Ill. 481.) Whether or not it is too remote must depend upon all the facts and circumstances of the particular case. The only bearing that passage of time of itself has upon the question is its effect upon the existence or nonexistence of probable cause. Here the magistrate had before him the evidence that the R & L Tobacco Co. had, over a considerable period of time in an extensive territory, made repeated sales and deliveries of cigarettes bearing counterfeit tax stamps. We believe that there was reasonable cause to believe that this offense was continuing, so that even after the lapse of the time indicated the issuance of the warrant would not be improper.

The search warrant was served by a State highway police officer. Plaintiff in error contends that a search warrant is in the nature of civil process and since State highway policemen are specifically prohibited by statute from serving civil process, (Ill. Rev. Stat. 1951, chap. 121, par. 307.16,) the service here was illegal and void. Plaintiff in error cites *People* v. *Moore,* 410 Ill. 241, as authority for the position that a search warrant is civil process. But that case contains no such holding. The question before this court was whether the State could appeal from that portion of an order of a county court ordering the return of contraband property which had been seized upon a search war-

rant and ordered suppressed. This court recognized the difference between that portion of the order suppressing the warrant and the use of the property as evidence in a criminal proceeding from that part ordering a return of the property. We said that the former, being an order in a criminal proceeding, was one from which the State could not appeal. The latter, being an order civil in its nature, was one from which an appeal would lie on behalf of the People. While the case does not decide the precise question here involved, it does stand for the proposition that an order entered suppressing evidence in a criminal proceeding after seizure of the same upon a search warrant is criminal in its nature. We believe the warrant itself is in the nature of criminal rather than civil process. This was recognized in principle in our decision in *Lippman* v. *People,* 175 Ill. 101 where, at page 111, we quoted with approval the language of Bishop on Criminal Procedure (vol. 1, sec. 716) from *Robinson* v. *Richardson,* 13 Gray 454: "Search warrants were never recognized by the common law as processes which might be availed of by individuals in the course of civil proceedings or for the maintenance of any mere private right, but their use was confined to cases of public prosecutions instituted and pursued for the suppression of crime or the detection or punishment of criminals." Under modern statutes relating to search and seizure the same principles prevail. (*People* v. *Kempner,* 208 N.Y. 16, 101 N.E. 794.) A search warrant is in the nature of criminal process. Its purpose is to aid in the detection and punishment of crime. It has no relation to civil process or civil trials. By statute State highway policemen are expressly designated as "conservators of the peace" with "all powers possessed by policemen in cities, and sheriffs, except that they may exercise such powers anywhere in this State." (Ill. Rev. Stat. 1951, chap. 121, par. 307.16.) Section 20 of the Illinois Cigarette Tax Act (Ill. Rev. Stat. 1951, chap. 120, par. 453.20,) authorizes "any

peace officer of the State" to obtain a search warrant under that section and section 3 of division VIII of the Criminal Code (Ill. Rev. Stat. 1951, chap. 38, par. 693,) provides that a search warrant shall be directed to the sheriff or any constable of the county, or bailiff of the municipal court of Chicago. Whether we regard the search warrant as having been issued under the Criminal Code or under the Cigarette Tax Act, a State highway policeman had the power and authority to execute the warrant.

Moreover, it may be seriously questioned that a search warrant was needed to make the search and seizure valid. Section 11 of the Illinois Cigarette Tax Act (Ill. Rev. Stat. 1951, chap. 120, par. 453.11,) provides in part as follows: "At all times during the usual business hours of the day any duly authorized agent or employee of the Department may enter any place of business of the distributor, without a search warrant, and inspect the premises and the stock or packages of cigarettes and the vending devices therein contained, to determine whether any of the provisions of this Act are being violated." Under the authority of this section the State police officers who served the warrant were also given written authority by the Department of Revenue to inspect the premises as its agents, with specific instructions as to the scope and nature of the inspection and examination. This written authority was read to the plaintiff in error on the premises following the reading of the search warrant and before the inspection began. Plaintiff in error says that the State highway police officers could not be agents of the Department, but assigns no reason for his conclusion and no reason is perceived by us why the fact that an individual happens to be a State police officer would prevent him from being an agent and so designated by the Department. Being agents of the Department of Revenue, these officers were lawfully on the premises under section 11 of the Cigarette Tax Act and the written authority received from the Department. While lawfully on

the premises these officers observed a felony being committed in their presence in violation of section 23 of the Cigarette Tax Act and forthwith arrested plaintiff in error. As peace officers they had authority to make the arrest, and, the arrest being lawful, a search of the immediate premises incident thereto would also be lawful, including the search of the safes in which the metering machines were found. (*United States* v. *Rabinowitz,* 339 U.S. 56; *People* v. *Dubin,* 367 Ill. 229.) We find, therefore, that the search and seizure were lawful and not in violation of the constitutional rights of plaintiff in error. The court correctly refused to allow the motion to suppress.

During the course of the trial a juror reported to a bailiff that an effort had been made to bribe her. The bailiff immediately brought the juror before the trial judge where she was examined in the presence of counsel for the People and counsel for both defendants. She described the attempt as having been made at her home by a man unknown to her who offered her $500 to vote for a verdict of "not guilty." The juror repeatedly stated that the experience would not prevent her from being a fair juror for both sides and that she held nothing against the defendants or the People because of the attempt. She also stated that she had not discussed the matter with any other juror and assured the court and counsel that she would not do so. It appeared that no member of the jury knew that she was in chambers discussing the matter. At the request of counsel for the People the court admonished the juror that she was to say nothing to the other jurors about the matter. She assured all concerned that she would say nothing to the other jurors. Following her return to the jury room, counsel for plaintiff in error and counsel for Lieb moved for a mistrial. The motion was denied and error has been assigned upon the ruling.

Not every effort by an unknown person to bribe a juror will require a mistrial. If it did, a defendant, if so

disposed, could hamper and delay the administration of justice indefinitely merely by adopting the expedient of having someone approach a juror. Whether or not a mistrial shall be ordered upon such an occurrence rests in the sound judicial discretion of the trial judge. It is not the law that a mistrial must result as a matter of course. No decisions of this court standing for such a position have been cited and we are aware of none. An examination of the authorities from other jurisdictions and of our own decisions relative to other forms of improper conduct of or affecting the jury leads us to the conclusion that the rule should be that such a motion is addressed to the sound judicial discretion of the trial judge in the first instance and that, in the absence of a showing that the defendant has been prejudiced, a ruling denying the motion is proper. See, *People* v. *Strause,* 290 Ill. 259; *People* v. *Coniglio,* 353 Ill. 643; *People* v. *Cain,* 365 Ill. 494; *People* v. *Mangano,* 354 Ill. 329; *People* v. *Phelps,* 388 Ill. 618. The record before us is devoid of anything showing prejudice to the rights of the defendant. On the other hand, it reveals zealous efforts by the court, counsel and the juror herself to safeguard those rights. The repeated assurances by the juror that she had not been prejudiced, her full and frank disclosure of the occurrence, the opportunity given to all counsel to examine her as much as they wished, the admonitions given by court and counsel and the assurance of the juror that she would follow those admonitions, all lead to the conclusion that the court acted properly in the exercise of its discretion. We find no error in the denial of the motion for a mistrial.

Plaintiff in error says he was refused counsel of his own choosing at the trial. The facts upon which this contention is based show that the indictment was returned again Lieb and Dolgin on December 18, 1951. They were arraigned on December 27, 1951. Both defendants were represented by Maurice J. Walsh, an attorney chosen by

them, who continued to represent them in the case throughout January, February, March, and early April of 1952, during which time many preliminary motions were made and disposed of. The case was finally set for trial on April 23, 1952. On the day prior to the trial both defendants filed a motion for a continuance until after the November elections, the grounds as stated being in essence that the case had been made a "political football." This motion contained no mention of possible antagonistic defenses. The motion was denied by the court and that ruling has not been questioned by the plaintiff in error. On April 23, 1952, the day of the trial, attorney Walsh filed a petition for severance on behalf of Lieb on the ground that the testimony of one of the witnesses for the People whose name had been furnished on April 15 would be derogatory as to Dolgin and that Lieb's rights would be affected. The motion was denied and Walsh then sought leave of court to withdraw as attorney for Dolgin on the ground that Lieb's and Dolgin's defenses would be antagonistic. This motion was also denied. Thereupon, on the same date, Harold S. Rosenfield, an attorney, filed a motion for a continuance on behalf of Dolgin, stating it was necessary, because of the conditions as outlined in Walsh's motion, that Dolgin have separate counsel; that he had only recently been consulted and had not had an opportunity to acquaint himself with the case; that Dolgin desired that he (Rosenfield) represent him. The trial court denied the motion for a continuance but allowed Rosenfield to enter his appearance and to represent plaintiff in error. Thereafter the trial proceeded with both Walsh and Rosenfield representing Dolgin and Walsh alone representing Lieb. From these events plaintiff in error contends that the trial court prevented him from receiving a fair trial by depriving him of an opportunity to prepare properly his defense and that, by refusing to permit Walsh to withdraw as attorney for Dolgin, Dolgin was, in effect, denied the right

to be represented by an attorney of his choice, contrary to his constitutional rights.

This argument can have merit only if the defenses of Lieb and plaintiff in error were, in fact, antagonistic. If this be not so, then there was no necessity for the intervention of new counsel at the last moment. And if new counsel was unnecessary there was no real need for a continuance. We have carefully examined the record to determine in what respects the defenses of Lieb and Dolgin were antagonistic but find nothing to indicate any incompatibility of interest. Neither defendant testified in his own behalf. Neither put in any evidence except that of his prior good reputation. It appears that counsel representing the defendants made substantially the same objections and filed the same motions on behalf of both defendants during the trial. Both defense counsel availed themselves of the opportunity given to cross-examine the witnesses for the People, but none of the testimony adduced either on direct or cross-examination indicates that either defendant was placed at a disadvantage because of a conflict of interests or defenses. The fact that counsel finally submitted and requested joint instructions on behalf of both defendants is probably the best indication that their positions were entirely compatible. A trial judge has considerable discretionary power in matters of granting a continuance to allow for the presentation of a defense and in connection with the substitution of counsel. (*People* v. *Quevreaux,* 407 Ill. 176; *People* v. *Ritcheson,* 396 Ill. 146; *People* v. *Martin,* 376 Ill. 569; *People* v. *Storer,* 329 Ill. 536.) No showing is made here that the defense of plaintiff in error would have been any different had the motion for a continuance been granted. He had the benefit of two counsel, both of his own choosing. Walsh had been in the case from the start. He was thoroughly familiar with all preliminary proceedings and had nearly four months to prepare for trial. Rosenfield, who was allowed to enter the case on behalf of plaintiff in

error on the day of the trial, proceeded to represent him diligently thereafter. The rights of plaintiff in error were not prejudiced by the action of the trial court in refusing to allow Walsh to withdraw as his counsel and to grant a continuance as requested by Rosenfield.

At the trial, certain records and documents of the Department of Revenue were admitted under section 10 of the Illinois Cigarette Tax Act which provides in part as follows: "The books, papers, records and memoranda of the Department, or parts thereof, may be proved in any hearing, investigation or legal proceeding by a photostatic copy thereof under the certificate of the Director of Revenue. Such photostatic copy shall, without further proof, be admitted into evidence before the Department or in any legal proceeding." (Ill. Rev. Stat. 1951, chap. 120, par. 453.10.) Documents entered at the trial pursuant to this provision were People's exhibit 4, being a photostatic copy of a letter from Pitney-Bowes, Inc., to the Department stating that meter No. 23227 was installed with R & L Tobacco Co., Inc., on June 14, 1948, and having attached thereto a code-layout of the counterfeit detection devices peculiar to that meter; People's exhibits 5 through 13, being revenue returns of R & L Tobacco Co. to the Department signed by plaintiff in error, showing use of meter No. 23227 and monthly quantities of cigarettes sold and stamped with this machine; and People's exhibit 50, being a copy of a letter of June 6, 1941, from the Department of Revenue to Pitney-Bowes, Inc., approving a design for the Illinois tax meter stamp, the form of the design being attached. Plaintiff in error challenges the constitutionality of the section of the statute pursuant to which these documents were admitted under the certificate of the Director of Revenue and questions the relevancy of the exhibits themselves.

The statute in question represents, we believe, an extension of the public-documents exception to the hearsay

rule, which, at common law, permitted the reception into evidence of public documents and official statements made by public officers in the performance of their official duties. In *People* v. *Love,* 310 Ill. 558, the defendant challenged an act of this State providing that the certificate of the Secretary of State placed in evidence in any prosecution, action, suit or proceeding, showing compliance or noncompliance with the Illinois Securities law, should be *prima facie* evidence of compliance or noncompliance with the law. There, as here, the contention was made that the act violated the defendant's constitutional rights by denying him the opportunity of seeing his witnesses in court and cross-examining them. There, as here, it was argued that the act changes the rules of evidence in criminal cases and that this cannot be done in a revenue act. At page 563 of that opinion we said: "While the legislature does not have power to declare what shall be conclusive evidence, (*People* v. *Rose,* 207 Ill. 352,) no one has any vested right in a rule of evidence either in a criminal or civil case, and there is no constitutional prohibition against the legislature changing it so long as it leaves to a party either in a criminal or civil case a fair opportunity to make his defense and to submit all the facts to the jury. The fact that the statute makes the certificate of the Secretary of State *prima facie* evidence of the facts therein stated does not make such act void, as contravening the constitution. (*People* v. *Beck,* 305 Ill. 593; *People* v. *Falk, ante,* p. 282; *Johnson* v. *Pendergast,* 308 Ill. 255.) Nor is the section void as depriving the accused of a right to meet witnesses face to face. Such doctrine has no application to documentary evidence of this character. (*Sokel* v. *People,* 212 Ill. 238; *Tucker* v. *People,* 122 id. 583.) The certificate of the Secretary of State is an official act under the seal of the State, required of a public officer by the statute, certifying to what the records of his office show. It is within the category of documentary evidence referred to in these cases.

The act is not open to the constitutional objections urged."

We believe that the constitutional objections made here as to section 10 of the Cigarette Tax Act are disposed of by the quoted portion of our former opinion. Further, it is true that most of the documents objected to would have been admissible at common law under the well-settled public-documents exception to the hearsay rule without regard to section 10 of the act. People's exhibit 4 is the only document which may not have been admissible under common-law principles. The record shows that every one of the facts sought to be established by the questioned documents is also established by other competent evidence in the case, removing all likelihood of prejudice. Nor are People's exhibits 5 through 13 irrelevant, as plaintiff in error contends. These revenue reports made by the plaintiff in error himself showed that the licensee was regularly using tax meter No. 23227, from which the inference arises that the Department had adopted the stamp contained in the meter and plaintiff in error had acquiesced in that adoption.

The objection that the court erred in permitting the jury to take exhibits 4, 50, and 5 through 13 with them into the jury room is also without merit. These exhibits, we believe, bore directly on the charge. It was discretionary with the trial judge whether or not to allow the jury to take them and no abuse of discretion is manifest. (*People* v. *Love,* 310 Ill. 558.) No objection was made to this procedure at the trial; nor was it raised in the motion for a new trial. It cannot be urged for the first time here. *People* v. *Thompson,* 406 Ill. 555; *People* v. *Niemoth,* 409 Ill. 111.

Objection is made to certain instructions which were given on behalf of the People. One of these informed the jury that it was not necessary that the People prove every incriminating fact or circumstance beyond a reasonable doubt, but to warrant a verdict of guilty it was sufficient if the jury believe from all the evidence that the guilt of

the defendants in manner and form as charged in the indictment had been proved beyond a reasonable doubt. This instruction was accompanied by others which informed the jury as to the essential elements of the crime which must be proved by the State. This was proper. (*People* v. *Ritcheson*, 396 Ill. 146.) We have examined all the instructions. We find that, taken together, they fairly state the law applicable to the case and are not open to the objection that they may have misled the jury.

We come, finally, to the contention that the evidence does not establish the guilt of the plaintiff in error beyond a reasonable doubt. The plaintiff in error argues that his conviction was based entirely upon circumstantial evidence. He urges that proof of opportunity, alone, is not sufficient to warrant a conviction and that, where a conviction rests upon circumstantial evidence, that evidence must be conclusive in character and guilt so thoroughly established as to exclude any other reasonable hypothesis. Plaintiff in error says that the machine for making counterfeit tax-stamp impressions which it is undisputed was found in a locked safe on the business premises occupied by R & L Tobacco Co., Inc., may have been placed there by someone else. This is entirely unlikely. The R & L Tobacco Co. was a small corporation. Only the defendants and their wives appear to have had any interest whatever in this business. They, or some of them, alone stood to profit by evasion of the Cigarette Tax Act. The suggestion that some employee may be responsible is absurd because it ignores the fact that no employee could profit by such conduct without the knowledge of the owners of the business, and connivance with them. It is undisputed that some eight months before the counterfeiting was discovered, plaintiff in error told one Michelson, a former business associate, of his plan to avail himself of such a counterfeiting machine. It is also undisputed that the machine was found at the place of business together with packages

of cigarettes which had been stamped with the spurious machine. The genuine machine, which had been supplied by Pitney-Bowes, was also found on the premises. The entire evidence, carefully considered, leads us to find that the jury was warranted in believing that the guilt of the plaintiff in error had been established beyond a reasonable doubt.

The judgment of the criminal court of Cook County will, therefore, be affirmed.