THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RUDOLPH MASON, a/k/a ANDERSON R. MASON, Defendant-Appellant.

(No. 12013; ▮▮▮▮▮▮▮▮▮▮)

Fourth District—November 29, 1973.

SIMKINS, J., dissenting.

Robert I. Auler, of Auler Law Offices, of Champaign, and Robert W. Dodd, Senior Law Student, for appellant.

James R. Burgess, Jr., State's Attorney, of Urbana (Roy E. Clark, Senior Law Student, of counsel), for the People.

Mr. JUSTICE SMITH delivered the opinion of the court:

Following a bench trial in the circuit court of Champaign County, the defendant was convicted of unlawful use of weapons, failure to register for a firearms owner's identification card, theft, and unlawful possession of a depressant or stimulant drug. Notice of appeal was filed on July 7, 1971, attacking the conviction. On July 21, he was admitted to probation for a two-year period. On September 13, he pleaded guilty to six counts of violations of the Narcotic Act. Probation was revoked and he was sentenced to the penitentiary for a term of 1 to 5 years. In this court, he limits his attack on his conviction to the charge that the guilty verdict

on the bench trial was based on evidence obtained under an unlawful search warrant. His contentions are without merit.

The complaint for search warrant requested a search of a residential house located at a specific address in Champaign, including the basement, attic or garage and a 1958 white over pink four-door hardtop Buick, Illinois license No. 665 713, to look for a driver's license belonging to Nancy Wiggins, several credit cards belonging to Jerry S. Wiggins, a Bank Americard, No. 833090 522717, and credit cards for several Champaign and Urbana stores belonging to Jerry S. Wiggins. The specific numbers of the driver's license and of the national credit cards were stated. Dr. Nancy Wiggins lost or had stolen a wallet containing the above items, on May 29, 1970. The loss or theft was reported to the police on June 4. On June 13, the Shell Oil credit card was used in Danville, Illinois. The sales slip had on it an Illinois motor vehicle license No. 665 713. The employee of that station identified the writing on the sales slip as his, and a change in the license number from 665 713 to 665 813 was made on the ticket by some one after it had been copied by the employee of the service station directly from the license plate. Illinois license No. 665 713 was issued to the defendant. The affidavit also stated: "9. That Mr. Mason has relatives in Dayton, Ohio; 10. That certain charges were made using Bank Americard No. 833090 522717 in several stores in the Dayton, Ohio area, the bills later received by Jerry S. Wiggins." A search warrant was issued and the residence was searched. Most, if not all, of the credit cards were found—some were in the bedroom and some were in the car. These facts are all supported by the affidavit. The credit cards were handed to the police officers by the defendant. The officers likewise picked up some other items including a sawed-off shotgun, which was not mentioned in the affidavit or the warrant. After hearing evidence on a motion to suppress, the court excluded a .22 caliber pistol, an Enfield rifle, the .380 ammunition, ammunition belt, double barrel pistols, and a single ring with a blue stone. The court overruled the motion to exclude the sawed-off shotgun.

The principal thrust of the defendant is that the search warrant was issued 116 days after the wallet had been stolen, and thus was too long delayed. The defendant also contends that the affidavit contained hearsay evidence. Thus, the defendant reasons he was convicted upon evidence illegally obtained. Stated another way, the basic question is whether or not probable cause existed at the time of the issuance of the search warrant.

■■ In *People v. Morrison*, 13 Ill.App.3d 652, 300 N.E.2d 325, this court had occasion to discuss the relationship between the information found in the affidavit and the date on which the search warrant was

issued and whether or not that information was so stale that it vitiated any semblance of probable cause. In discussing that issue, this court stated at page 655: "Just how long a period may pass before probable cause evaporates is contingent upon the nature of the criminal activity." We reasserted the proposition that whether or not the information in the complaint is too remote depends upon all the facts and circumstances of the particular case. (*People v. Dolgin*, 415 Ill. 434, 114 N.E.2d 389.) We have observed the complaint here involved establishes that the license number of the car had been changed on the ticket by the driver of the automobile after the filling station operator had copied the number directly from the license plate. The number 7 was altered to number 8. Likewise the affidavit clearly states that the charges made in the Ohio area were subsequently billed to Jerry S. Wiggins. It is self-evident, therefore, from the complaint that some considerable time elapsed from the time the sales slips were issued on the credit card until they reached the credit card office and were then billed and returned to Mr. Wiggins. On the issue here presented obviously the affidavit would have had greater probative value had the dates been furnished to the affiant on the complaint for search warrant. However, there is no time fixed specifically by law or otherwise that pronounces information stale. In considering this question, its determination is frequently made upon whether or not the type of criminal conduct is a "single shot" isolated occurrence or whether or not it sets up facts and circumstances reasonably indicating forgery, counterfeiting or other similar situations. (*People v. Dolgin*, 415 Ill. 434, 114 N.E.2d 389; 100 A.L.R.2d 543, par. 7.) Conduct of the past may well be the weathervane of tomorrow's conduct.

In the instant case it is apparent that during the entire time that the defendant had the credit cards in his possession he was in direct violation of Ill. Rev. Stat. 1971, ch. 38, par. 17—1(e), which states that a person commits a deceptive practice when "he uses a credit card which was issued to another, without the other's consent". Just how long it took the investigating officer or officers or the various credit card companies involved to handle these transactions is not shown by the complaint. We think the trial court as well as this court may take judicial notice of the fact that some considerable time elapses before the charge reaches the lawful owner of a credit card. Notwithstanding that the complaint for search warrant might have been more detailed factually, we cannot say that either the complainant or the trial judge did not have reasonable grounds to believe that the credit cards used on these several instances by the defendant would continue to be used and that he was still in possession of such cards. When testimony was taken before the trial court on the motion to quash, there was nothing included in the excerpts from

the record on this point. We necessarily conclude that the defendant has not carried the burden of proof which is his under our statute, *i.e.,* to establish that there was no probable cause for the issuance of the search warrant contained in the affidavit. Ill. Rev. Stat. 1971, ch. 38, par. 114—12.

■■ In *United States v. Ventresca,* 380 U.S. 102, 13 L.Ed.2d 684, 85 S.Ct. 741, the United States Supreme Court recognized that the fourth amendment requirements must have a practical and not an abstract interpretation. Affidavits for search warrants must be tested and interpreted by the issuing judges and reviewing courts in a common sense and realistic fashion. The determination is a judicial one. If the facts and circumstances within the knowledge of the officers are from a source that is reasonably trustworthy and the facts stated are such as to warrant a prudent man in believing that the defendant has committed or was committing an offense, then probable cause exists for the issuance of a warrant. (*McCray v. State of Illinois,* 386 U.S. 300, 18 L.Ed.2d 62, 87 S.Ct. 1056.) The application of these observations to the facts in this case suggests that the known time elapsed before a particular credit item transaction finally gets back to the lawful owner of the credit card is a matter of common knowledge. To establish that this was not a "single shot" transaction, but a continuing one may properly and appropriately require considerably more time before it can be said that a pattern in the use of the credit cards illegally obtained has developed. We do not regard it as an unreasonable conclusion on the part of the issuing judge from the facts developed that the defendant had on several occasions used the credit cards and that the probabilities were that he was still in the possession of such cards and would continue to use them. We cannot say that the time elapsed from the first event to the issuance of the warrant is unreasonable or not reasonably required for the establishment of a continuing criminal activity.

The complaint that some of the information in the affidavit was hearsay and resulted from the investigation of the offense by the officers does not militate against the validity of the warrant. The production of the credit slips originating in Ohio was the source of the affidavit for the issuance of the warrant. The credit slip produced by the operator of the service station as well as the production of the credit slips from Ohio is, we think, within the guidelines laid down in *Jones v. United States,* 362 U.S. 257, 4 L.Ed.2d 697, 80 S.Ct. 725; *People v. Williams,* 27 Ill.2d 542, 190 N.E.2d 303.

■■ We conclude that probable cause existed for the issuance of the warrant and that the conviction of the defendant based on evidence obtained from the execution of such warrant adequately established the

defendant's guilt of the crime of theft and justified the 1 to 5 year sentence. The seizure of the sawed-off shotgun and its admission into evidence before the trial judge although not named in the warrant is immaterial as the sentence imposed was for theft only.

Accordingly, the judgment is affirmed.

Affirmed.

CRAVEN, P. J., concurs.

Mr. JUSTICE SIMKINS dissenting:

I respectfully dissent. Here the question of probable cause relates not to whether a crime had been committed, but rather to an examination of the complaint for search warrant with a view to determine whether or not it established probable cause to believe that the credit cards were to be found in defendant's home. I agree that "Whether or not the issuance of the warrant is too remote from the happening of the event must depend upon all the facts and circumstances of a particular case", and certainly the nature of the criminal activity is pertinent insofar as it may be of a kind which warrants the inference that it is continuing. The question is whether the affidavit here established a basis upon which it could be concluded that the credit cards were probably to be found in defendant's residence some 116 days following their theft, and some 107 days following the use of one of the cards at the Shell Service Station. The affidavit is silent as to whether the Bank Americard was used prior to or after June 13th. The affidavit does not relate the date or dates when the latter card was used. *People v. Dolgin* (1953), 415 Ill. 434, 114 N.E.2d 369, involved a time lapse of 49 days between the date when information was received of the alleged violation and the application for the warrant. The application alleged the counterfeiting and forgery of cigarette meter stamps, and that the activity was established by purchases of cartons of cigarettes at six retail stores between August 24, 1951, and October 8, 1951. In denying defendant's claim that an unreasonable delay occurred between the securing of this information and the application for the warrant the court stated, "Here the magistrate had before him the evidence that the R & L Tobacco Co. had, over a considerable period of time in an extensive territory, made repeated sales and deliveries of cigarettes bearing counterfeit stamps. *We believe there was reasonable cause to believe that this offense was continuing,* so that even after the lapse of the time indicated the issuance of the warrant would not be improper." (Emphasis supplied.) (415 Ill. at 442.) I find nothing in the affidavit here which would justify the conclusion that the credit cards had been used repeatedly over a "considerable period of time,"

410

and absent that I find no reasonable basis for concluding that the offense was continuing. With reference to the Bank Americard the only statement in the affidavit is "That Mr. Mason has relatives in Dayton, Ohio; that certain charges were made using Bank Americard * * * in several stores in the Dayton, Ohio area, the bills later received * * *." In *People v. Morrison* (1973), 13 Ill.App.3d 652, 300 N.E.2d 325, this court upheld the validity of a search warrant issued 40 days after the last observation of the defendant's illegal possession of a shotgun with a barrel less than 18 inches in length. However, the affidavit in support of the application for the warrant established that the initial observation had been made in December 1970, and repeated observations had been made between December 1970, and April 1, 1971, which established continuing conduct for a period in excess of one year, a factual circumstance clearly absent in this case. I cannot agree that the affidavit here established a substantial basis upon which the magistrate could conclude that the use of the credit cards had continued and that the cards were therefore probably in the defendant's residence.