THE PEOPLE OF PUERTO RICO, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, BALDOMERO FREYRE, JUDGE, Respondent.

No. C-64-23. Decided October 9, 1964.

*J. B. Fernández Badillo, Solicitor General, Rodolfo Cruz Contreras, Acting Solicitor General, Héctor R. Orlandi Gómez, Assistant Solicitor General,* for petitioner. *José Rafael Gelpí* for intervener.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

The residence of Juan B. Pérez was searched by virtue of a warrant issued by a judge. Material used in the game

declared illegal by Act No. 220 of 1948 was seized—33 L.P.R.A. § 1247 *et seq.*—as well as money in cash. The district attorney filed an information for a violation of that Act. Prior to the day set for the hearing of the case, defendant requested that the material and the money seized be returned to him. He alleged that the search had been illegal.

The motion filed alleges, among others, the following reasons in support of the illegality of the search:

". . . no probable cause appears from the affidavit to believe in the existence of the grounds on which the search warrant was issued, since such affidavit, the only one presented to the issuing magistrate, does not contain a description of the material to be seized to show that it was material possessed and handled in violation of Act No. 220 of 1948, because the affidavit nowhere alleges a violation of the Act *supra,* and because between the date the officer alleges having seen material of the kind being handled, August 19, 1963, and the date of the affidavit, October 20, 1963, an unreasonable period of time has elapsed, the date of observance of the facts by the policeman being too remote to enable the magistrate who issued the search warrant on October 20, 1963, to determine whether the evidence sought to be seized could still be in the premises to be searched, and because the affidavit fails to state the place where to find the paper containing the pencil-written numbers mentioned therein."

The trial court granted the motion. In deciding the same, it said:

"The court grants defendant's motion to decree the illegality of the search carried out by virtue of the search warrant issued in this case, *in the belief that the affidavit made by agent José Robles Robles was altogether insufficient since nowhere is it stated therein that he observed any illegal operation in defendant's house to warrant the issuance of the search warrant to invade his residence.* The search is hereby declared null and void, and the court advises that it will not admit in evidence the result of such search, if any." (Italics ours.)

The State asked us to review that order. We acceded.

Our Constitution provides in § 10 of the Bill of Rights that "No warrant for arrest or search and seizure shall issue except by judicial authority and *only upon probable cause supported by oath* or affirmation, and particularly describing the place to be searched and the persons to be arrested or the things to be seized." (Italics ours.)

The preceding provision appears after affirmatively establishing in the first part of the section that "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated."

■ ■ This provision consecrates one of the most precious rights of the individual, the inviolability of his home. Since ancient times it is recognized in the Spanish laws. Sections 6, 7 and 8[1] of the Civil Political Pact between the Kingdom and Don Alfonso IX made in the *Cortes de León* of 1188, embrace the provisions in the *Fuero de León* approved by the Cortes in 1020, guaranteeing the inviolability of the home. See José Ramírez Santibáñez, *Aventando Cenizas, Estudio Comparativo entre el Ordenamiento de León de 1188* and the British Magna Charta of 1215, pp. 61–65 and 106 (San Juan, 1922). The Fourth Amendment to the Constitution of the United States[2] of America consecrates it as

---

[1] Those sections provide as follows:

"Sec. 6. I have sworn that neither I nor anyone may enter forcefully the house of another.

"Sec. 7. One who in an attempt to search another's house kills the owner shall be guilty of perfidy or treason.

"Sec. 8. If the owner or someone who helps to defend the house should kill any one of the aggressors, he or she shall not be guilty of homicide at all and he or she shall never be held liable for the damage done."

[2] The Fourth Amendment provides as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be vio-

a fundamental right of every American citizen. See Fraenkel, *Concerning Searches and Seizures*, 34 Harv. L. Rev. 361 (1921). In *Ker* v. *California*, 374 U.S. 23, 32 (1963), the Supreme Court of the United States said:

"Implicit in the Fourth Amendment's protection from unreasonable searches and seizures is its recognition of individual freedom. That safeguard has been declared to be 'as of the very essence of constitutional liberty' the guaranty of which 'is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen . . .' *Gouled* v. *United States*, 255 U.S. 298, 304 (1921); *cf. Powell* v. *Alabama*, 287 U.S. 45, 65–68 (1932). While the language of the Amendment is 'general,' it 'forbids every search that is unreasonable; it protects all, those suspected or known to be offenders as well as the innocent, and unquestionably extends to the premises where the search was made. . . .' *Go-Bart Importing Co.* v. *United States*, 282 U.S. 344, 357 (1931). Mr. Justice Butler there stated for the Court that '[t]he Amendment is to be liberally construed and all owe the duty of vigilance for its effective enforcement lest there shall be impairment of the rights for the protection of which it was adopted.' *Ibid.* He also recognized that '[t]here is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances.' *Ibid.*; see *United States* v. *Rabinowitz*, 339 U.S. 56, 63 (1950); *Rios* v. *United States*, 364 U.S. 253, 255 (1960)."

 Our constitutional provision and the Fourth Amendment, therefore, emphasize that search warrants shall issue only upon probable cause. "In determining what is probable cause, we are not called upon to determine whether the offense charged has in fact been committed. We are concerned only with the question whether the affiant had reasonable grounds at the time of his affidavit and the issuance of the warrant for the belief that the law was being violated

---

lated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

on the premises to be searched; and if the apparent facts set out in the affidavit are such that a reasonably discreet and prudent man would be led to believe that there was a commission of the offense charged, there is probable cause justifying the issuance of a warrant." *Dumbra* v. *United States*, 268 U.S. 435, 441 (1925); *United States* v. *Moriarity*, 327 F.2d 345, 348 (3d Cir. 1964); *People* v. *Fino*, 199 N.E.2d 151 (N.Y. 1964).

■ In *People* v. *Rivera*, 79 P.R.R. 697, 702 (1956), citing from *Brinegar* v. *United States*, 338 U.S. 160, 175 (1949), we said that "In dealing with probable cause . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved."

■ As recently as March 1964, in *Rugendorf* v. *United States*, 376 U.S. 528, 11 L.Ed.2d 887, 891 (1964), the Supreme Court of the United States again has said that the search warrant is sufficient as long as the affidavit provides a substantial basis to support the conclusion that the object to be seized is found in the premises to be searched. *Jones* v. *United States*, 362 U.S. 257, 271 (1960). And in *Aguilar* v. *Texas*, 378 U.S. 108 (decided June 15, 1964), it said that "although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant . . . the magistrate must be informed of some of the underlying circumstances" from which probable cause may be reasonably inferred for issuance of the search warrant.

The foregoing having been established, let us consider the affidavit which served as basis to issue the search warrant.

On October 20, 1963, José Robles Robles appeared before a justice of the peace and asserted under oath "that on

Monday, August 19, 1963, around 7:00 a.m., I saw Juan Pérez, known as 'Delfo,' checking a list on brown rag paper on which were written in pencil three-digit numbers followed by a hyphen and other amounts to the right, in the company of an individual whom I know as Francisco, who shortly before had arrived in a yellow Plymouth car, license plate 801-069. That I saw when Juan Pérez, known as 'Delfos,' handed money to Francisco and went inside his house at 985 Puerto Príncipe Street, Las Américas urbanization, of Río Piedras, P.R."

It is set forth in the affidavit that on a given date, August 19, around 7:00 a.m., the affiant saw Juan Pérez, known as Delfos, checking a paper list on which were written in pencil three-digit numbers followed by hyphens and other amounts to the right, in the company of another person, and that he saw when he went inside his house, which he describes.

The affidavit recites only a specific act which occurred on August 19. The affiant did not state in the affidavit that Juan Pérez used to receive, check, and handle *bolita* material in his residence, nor that he had seen him prior or subsequent to the specific date stated receiving, checking, or handling *bolita* material in his residence. Affiant's description of the occurrence in his presence was sufficient for a prudent and reasonable person to believe that the material used in the illegal *bolita* game was probably found on that date in the house described in the affidavit. The affiant specifically asserted that he saw Juan Pérez, known as Delfos, handling "a rag paper list" containing "three-digit numbers followed by hyphens and other amounts to the right," from which the magistrate could indeed infer that those lists "could not be used for anything except *bolita* game." *People* v. *Mantilla*, 71 P.R.R. 35, 50 (1950).

However, in order to determine probable cause, the time elapsed since the facts were observed until application was

made for a search warrant is of utmost importance. It is most important because, as we have said, the order shall issue upon probable cause, and if the facts observed are remote, it cannot be reasonably asserted that there is probable cause at the time of applying for the warrant.

■ In *Figueroa* v. *District Court*, 72 P.R.R. 23, 29 (1951), we said that "the affidavit upon which a search warrant issues shall state the date on which the commission of the offense was observed by affiant and that said statement in the testimony is essential for the validity of the warrant and that there does not exist a probable cause for the issuance of the same in the absence of said requisite." We said that this was so because the facts could have occurred long before applying for the search warrant, and "the probable cause for the issuance of the warrant may not exist at the time in which it was issued." And in *People* v. *Albizu*, 77 P.R.R. 851, 857 (1955), we said:

"Our statute does not provide for a specific period of time, after the occurrences, within which the affidavit supporting the search warrant should be made. Said affidavit, however, must set forth facts so closely related to the time of the issue of the warrant as to justify a conclusion of probable cause at that time, *Sgro* v. *United States*, 287 U.S. 206, 77 L.Ed. 260. That is why an affidavit should be made within a reasonable time after the affiant becomes acquainted with the facts reported therein, it being part of the judicial function, in determining whether there is probable cause, to judge, in each case, whether the facts set forth are so remote that they do not render probable the existence of cause for the search. See the Annotations in 162 A.L.R. 1411 and 1414 *et seq.* In the instant case the facts set forth by the applicant are not remote since they took place only three days before the affidavit was made. That is why we cannot agree with appellant in his argument that because the affidavit was made three days after the occurrences, the warrant issued by virtue thereof is void."

And in *People* v. *Rivera, supra,* we said at p. 706:

". . . In other words, it is the affidavit which should state the date on which the commission of the offense was observed so that the judge, before authorizing the search warrant, may determine whether or not it is too remote and whether the evidence sought to be seized may still be at the place to be searched."

In the aforecited cases this Court clearly established that the supporting affidavit for a search warrant should be made within a reasonable period after the affiant has learned of the facts to be therein stated. In *Albizu* we cited the Annotation appearing in 162 A.L.R. 1406, where in summing up the case law it is said that any term exceeding 30 days is unreasonable.

In the case at bar affiant asserted that on August 19, 1963, he observed the facts on which he based his application for issuance of the search warrant, and it was not until the following October 20, 62 days later, that he appeared before a magistrate to apply for the search warrant. Could the issuing magistrate reasonably conclude that the *bolita* material was still found in the residence of Juan Pérez? The facts on which the petition was based had occurred 62 days before. We do not believe that it could be reasonably concluded that the situation prevailing on August 19 subsisted 62 days later. The fact that on August 19 the owner of a residence had *bolita* material in his possession does not mean that that situation still existed on the following October 20. We fail to see how it can be asserted that, because of the fact that a person standing in front of his house and before entering "was checking a list on brown rag paper on which were written in pencil three-digit numbers followed by hyphens and other amounts to the right," it is normal and reasonable to conclude that there was probable cause two months later to believe that there was material of illegal *bolita* game in that house. It is an

isolated act. There is nothing to warrant the inference that the situation described in the affidavit still existed two months later. No assertion is made in the affidavit to the effect that subsequent to August 19 activities in connection with *bolita* were observed in the residence sought to be searched. If a search warrant could be issued under these circumstances, we would be disregarding the constitutional protection. And it should always be recalled that the constitutional guarantee constitutes a restriction on the official conduct and a protection to the citizen. It is well to repeat that in *Ker* the Federal Supreme Court reiterated that the Fourth Amendment "is to be liberally construed and all owe the duty of vigilance for its effective enforcement lest there shall be impairment of the rights for the protection of which it was adopted."

As we stated in *Albizu*, the facts on which a petition for a search warrant is based must be so closely related to the time of the issue as to justify a conclusion of probable cause at that time. That is why the application should be made "within a reasonable period after the affiant becomes acquainted with the facts reported therein." The right of every citizen to be respected in the tranquillity of his home is too fundamental for remote facts to warrant the issuance of a search warrant.

In *Schoeneman* v. *United States*, 317 F.2d 173 (D.C. Cir. 1963), the defendant was a business procurement specialist in the Navy Department in Washington. Markham, the other defendant, was a representative in the capital of companies seeking government contracts. In July 1960 Schoeneman and Markham organized a firm for the purpose of representing small businesses interested in selling supplies to the Government, utilizing Schoeneman's inside information. In the course of carrying on this business Schoeneman supplied Markham with confidential information dealing with future purchases by the Navy Department. In an

attempt to interest one Heins, on February 15, 1961, he took him to his home and displayed to him the confidential information. Heins passed the information on to the F.B.I. On June 2, 1961, the F.B.I. agent appeared before a Federal Commissioner and applied for a search warrant. The warrant was granted and incriminating evidence was seized. Schoeneman and Markham were indicted.

 The search warrant was challenged. In the supporting affidavit the F.B.I. agent alleged that he had confidential information furnished by a person who formerly was an employee of the Department of Justice and the Treasury Department of the United States, stating that he had seen in Markham's home on February 15, 1961, confidential government documents. In determining that there was no probable cause for the search at the time of applying for the warrant because of the time elapsed since the observation of the fact, the Court of Appeals for the District of Columbia stated as follows at p. 177:

"Thus the critical question here is whether the affidavits when presented to the commissioner gave probable cause to believe that the Government documents were still on the premises. The Government relies quite heavily upon the nature of the conspiracy ultimately revealed to show that it was entirely probable that the books seen on February 15 were on the premises on June 2. However, the elaborate plot later developed is not described in the affidavits. It is merely alleged that certain books were seen in Markham's house. There is no allegation that the books had not been moved in the intervening three and one-half months or, indeed, that Markham himself had not moved. To support a search warrant the proof supplied 'must speak as of the time of the issue of [the] warrant. The commissioner ha[s] no authority to rely on affidavits which have sole relation to a different time and *have not been brought down to date or supplemented* so that they can be deemed to disclose grounds existing when the . . . . warrant is issued.' *Sgro* v. *United States, supra,* Note 9, at 211, 53 S.Ct. at 140. (Emphasis added.) If commissioners are to serve a useful

function in protecting citizens against arbitrary searches, probable cause must be determined as of the time the warrant is issued and not with the benefit of hindsight."

It is clear that a rigid rule cannot be established as to the period of time which may elapse from the time the facts are observed and application for a search warrant is made. What is reasonable in one case may be unreasonable in another. The fact that the lawmaker established in the Act a 10-day period to execute the search warrant and was silent on the period which may elapse between the observation of the fact and the application for the search warrant, seems to confirm the foregoing. Each case should be considered in the light of its particular circumstances.

Notwithstanding the foregoing, an excessively long period should not elapse between the observation of the facts and the application for the warrant, since, as already stated, the probable cause should exist as near as possible to the date application is made for issuance of the search warrant.

█ It is most interesting to note that the period of time considered reasonable by the courts varies substantially. Four days between the occurrence of the fact and the application for search has been considered excessive, *People* v. *Siemieniec*, 118 N.W.2d 430 (Mich. 1962). It is generally recognized that a 20-day period is reasonable, and that in excess of 20 days, up to 30, it may be justified according to the circumstances present in each case. It has also been held that if a period exceeding 30 days has elapsed, the search warrant should not be issued in the belief that the probable cause required by the constitutional provision no longer exists.

In I Varon, Searches, Seizures and Immunities 321, 322, the time factors are set out in the following terms:

"(1) A specific statement in the affidavit for a search warrant of the time when the alleged offense was observed is

essential for the validity of the search warrant based upon such affidavit.

"(2) Such statement as to the time of the alleged offense must be clear and definite and must not be too remote from the time of the making of the affidavit and issuance of the search warrant.

"(3) Whether a particular statement as to time is sufficiently clear and definite to comply with the requirement of the rule stated under (2) depends on the circumstances and the context in which the statement is made.

"(4) There is no rigid rule for determining whether the stated time of observation of the offense is too remote from the time when the affidavit is made or the search warrant issued, but generally speaking, a lapse of time of less than three weeks will be held not to invalidate the search warrant, while a lapse of more than four weeks will be held to do so.

"(5) A mere error in the statement of time in the affidavit will not, as a rule, invalidate the search warrant."

See, also, *Schoeneman* v. *United States, supra*; *United States* v. *Allen*, 147 F.Supp. 955 (D.C.E.D. Ky. 1957); *Dandrea* v. *United States*, 7 F.2d 861 (8th Cir. 1925); *Rupinski* v. *United States*, 4 F.2d 17 (6th Cir. 1925); *People* v. *Wright*, 116 N.W.2d 786 (Mich. 1962); *Hanelmann* v. *State*, 113 So.2d 394 (Fla. 1959); I Varon, Searches, Seizures and Immunities 320–22 (1961 ed.); Cornelius, The Law of Search & Seizure, § 167 (1926 ed.); Annotation 162 A.L.R. 1406.

During the hearing of the motion to suppress the evidence, the policeman who made the affidavit said that he had let so much time elapse "in order to make sure, I continued observing the place until I was absolutely sure." He also explained that he was an undercover agent, and that if he made himself known he would be prevented from continuing further his investigating work.

█ In order to determine probable cause, all the facts and circumstances justifying a conclusion of existence of

probable cause should be stated in the affidavit. The affiant said nothing on his observations subsequent to August 19. And it is well to point out that in his testimony during the hearing of the motion to suppress the evidence, he did not mention any specific facts observed by him subsequent to that date.

▮ In his supplementary memorandum the Solicitor General raises the question that the delay was justified for the same reasons stated by this Court to justify the delay in filing the informations for a violation of the *Bolita* Act. The two situations are different. In *People* v. *Seda*, 82 P.R.R. 695, 701 (1961), we sanctioned the delay in filing an information for a violation of the *Bolita* Act notwithstanding the law expressly provided that it shall be done immediately. We did so in view of "the need to postpone the detention or arrest so as not to impair a major investigation on clandestine activities such as the sale of beverages, narcotics and game of *bolita*." But in that case we were only concerned with a statutory provision requiring the immediate arrest of the person. The omission to do so did not violate his fundamental rights guaranteed by the Constitution. The present case involves a fundamental right guaranteed constitutionally. The search of a dwelling shall issue only upon probable cause that an offense is being committed therein. And we have already seen that the time elapsed between the observation of the fact and the application for the search warrant is fundamental in determining probable cause. We could not, under the guise of other considerations, adopt a rule which would violate such a fundamental right.

The Solicitor General cites *People* v. *Dolgin*, 114 N.E.2d 389 (Ill. 1953), in which the court sustained as reasonable the 49-day period elapsed between the observation of the facts and the application for search. Aside from the fact

that apparently that is the only occasion in which a period exceeding 30 days has been considered reasonable, the circumstances surrounding the case are entirely different from most search cases. To begin with, we note that a dwelling was not involved in that case, and that the court had serious doubts as to whether a search warrant was needed. To that effect, it said at p. 394: "Moreover, it may be seriously questioned that a search warrant was needed to make the search and seizure valid." The affiant swore that on several occasions between August 24 and October 8 he purchased from several retailers cigarettes bearing counterfeit internal-revenue stamps. Forty-nine days after the last purchase he swore the affidavit on which the warrant was issued to search the premises where the company manufacturer of the cigarettes was located. In upholding the validity of the warrant, the court said: "Here the magistrate had before him the evidence that the R & L Tobacco Co. had, over a considerable period of time in an extensive territory, made repeated sales and deliveries of cigarettes bearing counterfeit tax stamps. We believe that there was reasonable cause to believe that this offense was continuing, so that even after the lapse of the time indicated the issuance of the warrant should not be improper."

It may be observed that the facts are different, and it could be reasonably inferred that if cigarettes bearing counterfeit stamps were being sold for a protracted period, that situation would continue some time thereafter. Furthermore, there was the circumstance noted at the beginning that the court had serious doubts as to the need for a search warrant.

■ Although for other reasons, the order of the court granting the motion for suppression of the evidence was correct. The writ issued will be quashed.

Mr. Justice Rigau dissented.

Mr. Justice Rigau, dissenting.

San Juan, Puerto Rico, October 9, 1964

I, too, love the Bill of Rights, but I believe that in order that the courts may decide correctly the controversies it is necessary that they give special attention to the particular facts of each case. It is not enough to take a rule, whether of the Constitution, of a statute, or of a decision, and establish it as a major premise, placing underneath it and extracted out of context the issue in the case (minor premise), and, as if adding or subtracting, produce a result.

We should not be overimpressed either by the number of citations of cases per se which may be incorporated into an opinion. Cases are but decisions made by other men after examining other facts, in other places, and at other times. They only have a persuasive value for the intellect if their reasoning is applicable to the case under consideration. Excepting, of course, a situation which may arise whenever a case of a higher court necessarily binds a lower court, but this is not the situation in the case at bar.

Anyone who is acquainted with American legal bibliography and with a law library knows how easy it is to fill any number of pages with citations of cases on practically any human activity. It is sufficient to examine a volume of "Corpus Juris Secundum," of "American Jurisprudence," of "Century Digest," the "Decennial Digests," the "General Digest," "Words and Phrases," "A.L.R.," "A.L.R.2d," etc., to realize this. The noted professor K. N. Llewellyn wrote, in the English language, that "Cititis" is a disease abroad in the land, and that the cure is to ask: Where did Aristotle get his stuff from?[1] I believe that a juridical opinion stands or falls depending on its reasoning and not on the space devoted therein to citations.

---

[1] *The Bramble Bush* 8, 1951 ed.

The search in this case was carried out by virtue of a warrant issued by a magistrate. That warrant was issued on the basis of an affidavit made by a police officer, which affidavit is sufficient because of the points therein covered and by the accuracy of their description. The officer declared that he knew for a fact, because he had seen it, that defendant "receives, checks, and handles material connected with the illegal game of *bolita, in his residence*, situated at . . ." (the street, number, and town follow). (Italics ours.) It is well to clarify that at the time the officer observed the facts described in his affidavit, he was working as an undercover agent.

In addition to the foregoing, the agent set forth in his affidavit that on August 19, 1963, he saw the defendant checking a paper list containing pencil-written three-digit numbers followed by hyphens and other amounts to the right, in the company of a person known as Francisco who had arrived earlier at defendant's house in a yellow Plymouth automobile, license plate No. 801-069. The affidavit also contains a detailed description of the house where the facts took place and which was to be searched. The affidavit further recites that the said automobile is registered in the Automobile Division of the Department of Public Works in the name of Francisco Soto Ríos, resident at 419 Borinquen Avenue, Barrio Obrero, Santurce, Puerto Rico.

As is known, the test or standard for determining probable cause cannot be expressed in rigid and absolute terms. The question consists in determining whether the facts and the inferences derived therefrom, in the opinion of a prudent and reasonable person, are sufficient to believe that an offense is being or has been committed in connection with which the law authorizes the issuance of a search warrant.[2] It is not

---

[2] *People* v. *Rivera,* 79 P.R.R. 697, 706 (1956); *Carroll* v. *United States,* 267 U.S. 132 (1925); *Steele* v. *United States,* 267 U.S. 498 (1925); *Dumbra* v. *United States,* 268 U.S. 435 (1925).

necessary for the magistrate who is going to issue the search warrant to be convinced that the law is being actually violated.[3] It is sufficient for the magistrate to reasonably believe that the law is probably being violated.[4] That is why what the magistrate is going to determine is called *probable* cause; it is not certain cause.[5]

In the case at bar the search was carried out, the police having seized in defendant's residence *bolita* material and $17,333 in cash, all of which defendant admitted. Defendant's residence is the same as that described in the affidavit on which the search warrant was issued. Thirty-four pencil-written *bolita* lists were seized there containing three-digit numbers followed by a hyphen and other numbers to the right. We have taken judicial notice of how the *bolita* game is played in Puerto Rico. *People* v. *Mantilla*, 71 P.R.R. 35, 49 (1950).

In addition to other contentions which did not prosper, defendant alleged that the search was illegal because an unreasonably long period of time elapsed between the day the officer observed the handling of *bolita* material, August 19, 1963, and the date of the affidavit, October 20, 1963, the date when the facts were observed being too remote to enable the magistrate who issued the search warrant on October 20, 1963, to determine whether the evidence sought to be seized would still be in the premises to be searched. This is precisely the core of the problem raised: whether on the basis of that affidavit made quite some time after the observation of the facts, a prudent person could believe,

---

[3] *People* v. *Rivera, supra* at 706; *Brinegar* v. *United States*, 338 U.S. 160, 175 (1949).

[4] *Rugendorf* v. *United States*, 376 U.S. 528, 533 (1964).

[5] Furthermore, the Supreme Court of the United States recently reiterated that the affidavit need not be based on affiant's personal observations (as in the case at bar), but it may be based on hearsay information. *Aguilar* v. *Texas*, 378 U.S. 108, decided June 15, 1964. In the same connection, *Jones* v. *United States*, 368 U.S. 257 (1960).

in this particular case, that it was probable that the law was being violated in that place.

Sixty-two days actually elapsed between the date the undercover agent observed the facts and the date of the affidavit. Prima facie it seems like a very long period, but the fact is, as I said before, that the courts cannot, or should not, decide the cases prima facie. We cannot make case law out of impressions. It is not enough to read the Bill of Rights, extract the issue out of context, and then reach a conclusion paying no attention to the facts of the case.

As we said in *People* v. *Albizu*, 77 P.R.R. 851, 857 (1955), "our statute does not provide for a specific period of time, after the occurrences, within which the affidavit supporting the search warrant should be made." There we said that the affidavit should be made "within a reasonable time after the affiant becomes acquainted with the facts reported therein, it being part of the judicial function, in determining whether there is probable cause, to judge, in each case, whether the facts set forth are so remote *that they do not render probable the existence of cause for the search.*" (Italics ours.) It should be noticed that the gist of the problem is *whether or not there is probable cause at the time of issuing the search warrant.*

The law provides, in turn, that after a search warrant is obtained the same shall be executed "within ten days of its issuance." Rule 232 of the Rules of Criminal Procedure. The two rules announced, one jurisprudential (of the reasonability of the period of time) and the other positive (the period of 10 days to execute the warrant), are not whimsical. They have their rationale, as I shall point out hereinafter.[6]

---

[6] It should be noted further that Rule 234 of the Rules of Criminal Procedure, which is the rule which sets forth the grounds for requesting the suppression of evidence obtained in an illegal search, does not contain the ground invoked by defendant in this case.

The nature of the offense is perhaps the most important factor in determining whether it is probable that the offense in question is *still* (after observing the facts and making the affidavit) being committed at the time of issuing the search warrant. There are offenses which can be committed only once, as for example, killing a particular human being. Others, although they may be committed for a short period of time, cannot continue to be committed indefinitely, as for example, beating a human being. Other offenses may continue to be committed for many days, as for example, printing counterfeit internal-revenue stamps, betting on the *bolita*, or operating a *bolita banca*, and unlawful conspiracies.

*The nature of the offense* at the time the magistrate is going to determine whether or not there is probable cause for issuing the search warrant plays a very important role. It is clear that if 60 days ago *A* was beating *B* inside a house, after the lapse of such period *B* could not be rescued from his torture by entering that place. But the same may not be said of the *bolita* game. On the contrary, it is normal and probable that if betting on the *bolita* or operating a *bolita banca* was taking place there, such offense is still being committed as long as nothing is done to prevent it.[7] The issuing magistrate in this case was justified in believing that there was probable cause, in believing that it was probable that the law was being violated there. It is ineffable the naiveness revealed by the majority opinion in saying that the operation of *bolita* observed and described by the officer in his affidavit "is an isolated fact."

The offense in the case at bar, by its nature, meets the standard of reasonability which we stated in *People* v. *Albizu, supra* at 857. The standard therein stated is not blind

---

[7] The Law of Evidence provides that "a thing once proved to exist continues as long as is usual with things of that nature." 32 L.P.R.A. § 1887(31).

and rigid but realistic, to be applied jurisprudentially to each particular case as warranted by the circumstances thereof.

I believe that the majority is mistaken as to the importance attached to the time factor, in stating in its opinion that "in order to determine probable cause, the time elapsed since the facts were observed until application is made for a search warrant is of *utmost* importance." (Italics ours.) Although the time elapsed is a factor to be considered in making such a determination, in my opinion, as I have said, the most important factor is the nature of the offense. To hold otherwise is to subject the substance—if it is probable whether or not that an offense is being committed—to the accessory—the time elapsed. In other words, it is to pick the radish by its leaves.

A second factor or element justifies the period elapsed in this case between the day the facts were observed and the day the affidavit was made and the search warrant obtained. The violations of the *Bolita* Act as well as of the Narcotics Act are very difficult to discover, and the material objects used in those violations—paper lists, pills, etc.— are easy to conceal. Both types of offense give rise to the commission of others. As we stated in *People* v. *Luciano*, 83 P.R.R. 551, 564 (1961), the illegal game of *bolita* causes serious social evils in Puerto Rico. In that game large sums of money are spent which belong almost entirely to the economically weaker groups; it has facilitated the creation and consolidation of professional criminal organizations which plunge from that activity into others which are more dangerous for society, and which constitute an erosive element even for the police force, *cf. People* v. *Adorno*, 81 P.R.R. 504 (1959). Because they are so harmful and so hard to discover, society, through the State, uses undercover agents and informers in an effort to discover those offenses. *Roviaro* v. *United States*, 353 U.S. 53, 59 (1957);

*Scher* v. *United States*, 305 U.S. 251, 254 (1938); *In re Quarles and Butler*, 158 U.S. 532 (1895); *Vogel* v. *Gruaz*, 110 U.S. 311, 316 (1884).

It is because of the nature of the offenses which we have mentioned that the police carries out the investigation work (which necessarily it is bound to do before filing information) operating by geographical sections. Since it takes time to cover a particular section, and since once the undercover agent or informer is known (as a result of the judicial proceedings) such undercover agents or informers are no longer useful for those purposes, it is necessary and inevitable that an appreciable period of time elapse between the date the undercover agent observes the facts and the date of the affidavit and search.

Since search warrants, once they are obtained, must be executed within 10 days of issuance, it is natural that an appreciable period of time should elapse between the observation of the criminal acts and the agent's affidavit (made for the purpose of obtaining the search warrant). Because of that 10-day limit the agents cannot submit the matter to the magistrate and, after obtaining the warrant, they must wait until the investigation is complete in order to carry out the search. In a case such as the one at bar the delay was not vicious, but was necessary and socially useful. Already in *People* v. *Super. Ct.*; *Figueroa, Int.*, 81 P.R.R. 445, 460 (1959), we had recognized "the need to postpone the detention or arrest so as not to impair a major investigation on clandestine activities such as the sale of beverages, narcotics and game of *'bolita,'* or on subversive acts." We reiterated that in *People* v. *Seda*, 82 P.R.R. 695, 701 (1961). As stated by the Supreme Court of the United States, public policy forbids disclosure of undercover agents' identity unless essential to the accused's defense at the trial. *Scher* v. *United States, supra* at 254. See, also, *Segurola* v. *United States*, 16 F.2d 563, 565 (1926); *Shore* v. *United States*, 49 F.2d

519, 522 (1931); *McInes* v. *United States*, 62 F.2d 180 (1932). *Cf. Roviaro* v. *United States, supra.*

A case similar to the one at bar, decided by the Supreme Court of Illinois in the manner which I propose, is that of *People* v. *Dolgin*, 114 N.E.2d 389 (1953). In that case defendant printed counterfeit internal-revenue stamps. As in this case, the police used an undercover agent to obtain the evidence to prosecute him. Several purchases of stamps were made from defendant. Ninety-four days elapsed between the first purchase of counterfeit stamps and the date the affidavit was made. Forty-nine days elapsed between the date of the last purchase and the affidavit. The search warrant was procured, the search was carried out, and the evidence obtained. Defendant moved for suppression of the evidence alleging, as in the case at bar, that the period of time elapsed between the observation of the criminal acts and the making of the affidavit had been unreasonably long.

In the *Dolgin* case, *supra*, the court said at p. 393 that a number of cases were cited in which the lapse of time was held to be unreasonable, but that they did not involve continuing offenses as in the case under its consideration. The court said that no hard-and-fast rule could be established on this point, and that the determination on whether or not the date on which the facts were observed was too remote depends upon the circumstances of the particular case. The only bearing that passage of time of itself has upon the question, said the court, is in connection with the problem of whether or not there is probable cause at the time of issuing the search warrant. That is the position which I propose in this opinion. In *Dolgin*, *supra*, the court held that in view of the nature of the offense the period of time elapsed between the observation of the facts and the affidavit was not unreasonable and, on the contrary, that there was probable cause for issuing the warrant. See, also, in the

same sense, *People* v. *Montgomery*, 189 N.E.2d 327, 328 (1963).

The federal case of *Schoeneman* v. *United States*, 317 F.2d 173, decided last year, cited in the majority opinion, says at p. 177, as the test for the issuance of a valid search warrant, that "probable cause must be determined as of the time the warrant is issued." That is all that I propose.

As may be seen, my difficulty with the majority opinion lies in that I do not believe that law is made of a number of rules to be mechanically applied, but I believe that it is necessary to arrive at a decision in each case in accordance with its circumstances and merits. As stated by Mr. Justice Holmes in his celebrated dissent in *Lochner* v. *New York*, 198 U.S. 45, general propositions do not decide concrete cases.

Noted jurists have criticized the limited syllogistic theory of application of the law. I think that the attitude and approach revealed by this dissenting opinion are consonant with what in my opinion are the best trends in the application of the law. See Castán, *Teoría de la Aplicación e Investigación del Derecho* 11–23 (1947, Madrid, Editorial Reus). See, also, on the matter, Castán, *La Formulación Judicial del Derecho* 1–17 (1954, Madrid, Editorial Reus), and what he says on the matter in I-1 *Derecho Civil Español, Común y Foral, Parte General* 351 (9th ed. 1955).

Of Roscoe Pound, see his *"Mechanical Jurisprudence"* in 8 Colum. L. Rev. 603 (1908); his *"Theory of Judicial Decision"* in 36 Harv. L. Rev. 641, 802, and 940 (1923); his "Law Finding Through Experience and Reason" (1960); also, III Jurisprudence 507–13 (1959). Of Puig Brutau, see *La Jurisprudencia como Fuente del Derecho* 1–55 (Bosch Ed., Barcelona). By Cardozo, his Nature of the Judicial Process 161–62 (1921). By W. Friedman, see his Legal Theory, ch. 31, p. 401 *et seq.* (4th ed. 1960). In the 3d ed. (1953), it is ch. 21, p. 291 *et seq.*

44

A rational analysis such as the one I propose and the one made by the Supreme Court of Illinois in the *Dolgin* case, *supra*, cannot be substituted by an eulogy of the Bill of Rights. It is not a question of to be or not to be "liberal"; it is a question of making law in the light of the reality.